No. 16,689.

DOWNING ET AL. *v.* COPELAND ET AL.
(249 P. [2d] 539)

Decided October 14, 1952.

Mr. ARTHUR C. GORDON, Mr. ST. GEORGE GORDON, BAR-BARA LEE GORDON, for plaintiffs in error.

Mr. OAKLEY WADE, Mr. WILKIE HAM, for defendants in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

Plaintiffs in error, who were plaintiffs below, were the owners of land and appurtenant water right diverted from Graveyard Creek through Graveyard Ditch, the headgate of which was on lands of defendants Copeland, farmed by their tenant, defendant Miller. Copelands had a ditch with junior water right, having its headgate about a mile upstream from that of plaintiffs, and in the year 1950 repeatedly took the water therein when it was wanted and needed by plaintiffs below. Plaintiffs, in their action now before us, sought to enjoin defendants from interfering with their use of said water and ditch.

After hearing of the cause, the trial court made comingled findings of fact and conclusions of law as follows:

"1. That the Plaintiffs are the owners of a part of Indian Claim No. 22, and the owners of Water Priority No. 1 on Grave Yard Creek, which water priority is appurtenant to a part of said land.

"2. That the Defendants Clyde Copeland and Violet Copeland are the owners of the land through which Grave Yard Creek runs immediately north of the original point of diversion of water under said Priority No. 1.

"3. That prior to the year 1943, what water was diverted from Grave Yard Creek by plaintiffs or their predecessors in title under said Priority No. 1 was diverted by means of a dam across Grave Yard Creek, which dam was some 400 feet below the point of diversion now claimed by the plaintiffs.

"4. That sometime prior to 1943 the dam washed out and it has not since been repaired.

"5. That in 1943 Plaintiffs started to change the point of diversion by digging a channel in the bed of Grave Yard Creek, which channel was dug on land owned by

the Defendants and was for a distance of approximately 424 feet.

"6. The evidence is not clear when the new point of diversion was first used for the purpose of diverting water to Plaintiffs' land; but the evidence establishes it was used in 1948, 1949, and part of 1950.

"7. The evidence is not clear as to whether Defendants objected to the change in point of diversion prior to April, 1950, but the Defendants did not consent to that change.

"8. In order to use the new point of diversion a small dam of some type must be used at times in order to get an adequate flow of water through the intake box of the new point of diversion.

"9. That with a small amount of work and expense the Plaintiffs could repair the old dam and use their original point of diversion.

"10. The Court finds that the Plaintiffs did change the point of diversion of their water priority and in so doing did trespass on the land of the Defendants and continued such trespass to date.

"11. That the Plaintiffs now have and ever since the attempted change of the point of diversion have had an adequate and speedy remedy at law to obtain such a change in point of diversion under the provisions of Paragraph 189 (22) Chapter 90, CSA 1935, as amended, (And Section 104 of Chapter 90, 1935 CSA).

"12. That the Preliminary Injunction granted on May 8, 1950, should be dissolved; that the application for a Permanent Injunction should be denied and that Plaintiffs' claims for damages should be denied."

■ ■ No serious challenge is made to the court's findings as to the facts, but only to its conclusions of law. As to these conclusions, we think the trial court erred. The point of diversion was and continued to be the point at which the water was diverted from the bed of the stream at the headgate of plaintiffs' ditch. The construction of a channel within the stream bed to con-

duct the water to that headgate did not require any proceeding under the statute to authorize the change of point of diversion, and did not constitute a change of point of diversion. Plaintiffs' right to divert and use the water from the stream at the headgate of their ditch included the right to make and change the necessary dams, channels or other diversion works within the stream bed which might be necessary to enable them to continue the diversion of water at their headgate, provided no additional burden were made upon defendants' lands thereby. No claim is here asserted of any additional burden by virtue of the channel excavated in the stream bed, and, in any event, such claim would not be valid here, for the reason that defendants Copeland with knowledge permitted plaintiffs to construct the channel and install the box at the upper end thereof in the bed of the stream, without objection.

Assuming that plaintiffs were required to obtain consent for digging a channel in the bed of the stream above their headgate in order to divert water therethrough, defendants' undisputed instruction to their tenant, as testified by him, to permit it to be done, and the permitted use thereof for several years thereafter without objection, implied consent. *De Graffenried v. Savage*, 9 Colo. App. 131, 47 Pac. 902.

The judgment is reversed and the case remanded for further proceedings, if any, not inconsistent with the views here expressed.